Evan S. Cohen, SBN 119601
esc@manifesto.com
1180 South Beverly Drive. Suite 510
Los Angeles, CA  90035-1157
(310) 556-9800

BYRNES HIRSCH P.C.
Bridget B. Hirsch, SBN 257015
bridget@byrneshirsch.com
2272 Colorado Blvd., #1152
Los Angeles, CA  90041
(323) 387-3413

Attorneys for Plaintiff JOHN GUMMOE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GUMMOE, an individual, | Case No.: 2:19-cv-00840 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1) COPYRIGHT INFRINGEMENT; AND** |
| WARNER-TAMERLANE PUBLISHING CORP., a California corporation; ARTISTS RIGHTS ENFORCEMENT CORP., a New York corporation; STEVEN AMES BROWN, an individual; and DOE 1 through DOE 20, inclusive, | **(2) DECLARATORY RELIEF** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1
**COMPLAINT**

Plaintiff John Gummoe alleges:

# I

# JURISDICTION

1. This court has subject matter jurisdiction over this action because it arises under the laws of the United States, 28 U.S.C. § 1331, more particularly, because it arises under an Act of Congress relating to copyrights, 28 U.S.C. § 1338, namely, the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq., and section 115 in particular, 17 U.S.C. § 115.

2. This court has jurisdiction over any claims set forth in this action that do not arise under the Copyright Act, pursuant to supplemental jurisdiction under 28 U.S.C. § 1367, in that all of the matters herein arise from the same set of operative facts.

# II

# PARTIES

3. Plaintiff John Gummoe ("Gummoe") is an individual residing in the City of Los Angeles, within the Central District of California.

4. Defendant Warner-Tamerlane Music Corp. ("Warner-Tamerlane") is a corporation organized under the laws of the State of California and has its principal place of business in the City of Los Angeles, within the Central District of California.

5. Defendant Artist Rights Enforcement Corp. ("AREC") is a corporation organized under the laws of the State of New York and has its principal place of business in New York City, New York. AREC has had systematic and continuous contact with California, and, in particular, the County of Los Angeles, for decades.

6. Defendant Steven Ames Brown ("Brown") is an attorney and a member of the State Bar of California, and has his principal place of business in the City of San Francisco, California.

2
COMPLAINT

7. Plaintiff sues the defendants identified below as Doe 1 through Doe 20, inclusive, on the grounds that plaintiff is ignorant of the true names and capacities of those fictitiously named defendants. Plaintiff will seek leave of court to amend this complaint when the true names and capacities of those defendants are ascertained.

8. Each of the named defendants was the agent, employee, partner, joint venturer, or co-conspirator of each of the other defendants, and was at all times acting within the purpose and scope of said agency, employment, partnership, joint venture, and conspiracy, and each defendant has ratified and approved the acts of the remaining defendants.

## III

## VENUE

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1400(a), in that defendant Warner-Tamerlane has its principal place of business in this district.

## IV

## FACTS COMMON TO ALL CLAIMS

11. Plaintiff realleges paragraphs 1 through 10, inclusive, as if fully set forth.

12. Gummoe is a musician and a songwriter. As of this filing, Gummoe is eighty years of age. In or about 1961, he was one of the founding members of the musical group The Cascades. In 1962, Gummoe wrote and composed the musical composition "Rhythm of the Rain," which was recorded and released by the musical group The Cascades and became an international hit, achieving chart positions in eighty countries. It has been recorded by numerous other recording artists over the years. In 1999, when Broadcast Music, Inc. ("BMI"), a performing

rights organization, published its "Most Performed Songs of the Century" list, "Rhythm of the Rain" was number nine. Gummoe also wrote and composed a composition entitled "There's a Reason," also recorded and released by The Cascades. "Rhythm of the Rain" and "There's a Reason" shall be referred to herein as the "Compositions." Gummoe is the sole author of both Compositions.

13. "Rhythm of the Rain" was registered in the United States Copyright Office on November 23, 1962 as number Eu746121, and renewed on July 20, 1990, as number RE485353. "There's a Reason" was registered in the United States Copyright Office on June 21, 1962 as number Eu724678, and renewed on July 20, 1990, as RE485333.

14. In 1963 and 1964, Gummoe entered into written agreements with publishers DeVorzon Music Corp. ("DeVorzon") and Sherman Music Corporation ("Sherman"), in which Gummoe conveyed to DeVorzon and Sherman *only* the original term of the United States copyright in and to the Compositions. During that time, a copyright lasted for a first term of 28 years from the date it was secured; thus, Gummo conveyed to DeVorzon and Sherman copyrights beginning upon registration in 1962 and ending on December 31, 1990. In or about 1967, DeVorzon and Sherman assigned their rights to a predecessor of Warner-Tamerlane.

15. During the 1970s, 1980s, and early 1990s, Gummoe did not receive any royalties from any music publisher for the so-called "writer's share" of non-performance royalties, although he did receive the "writer's share" of public performance royalties from BMI.

16. AREC is a company based in New York, formerly run by Chuck Rubin, who died in 2018, and which is now run by his daughter, Gabin Rubin. AREC purports to be a company that helps recording artists and songwriters recover unpaid royalties and/or other rights. In October 1994, Gummoe entered into a one-page agreement with AREC (the "AREC Agreement"), in which AREC

agreed to act "in connection with investigation into and collection and/or recovery of any and all artist and/or songwriter royalties and/or other assets which are or may be due and owing to [Gummoe]." In return for AREC's services, Gummoe agreed to pay "an ongoing fifty percent (50%) of all sums and assets which are recovered as a proximate result of [AREC's] activities." A true and correct copy of the AREC Agreement, dated October 14, 1994, is attached hereto as "Exhibit A."

17. On or about October 25, 1994, Chuck Rubin wrote a letter to Warner-Tamerlane, in which he claimed that "Mr. Gummoe is asserting both his rights to receive songwriter royalties from your firm as successor to the original publisher and to the U.S. renewal terms of his two compositions, 'There's a Reason' and 'Rhythm of the Rain.'" A true and correct copy of the October 25, 1994 letter is attached hereto as "Exhibit B."

18. Shortly thereafter, in connection with AREC's representation of Gummoe, AREC arranged for Gummoe to retain Brown to bring an action against Warner-Tamerlane, DeVorzon, and Sherman. Brown and AREC have a close relationship; at that time and since that time, Brown has represented AREC in many civil actions, and has represented recording artists and songwriters who entered into agreements with AREC. On or about December 27, 1994, Gummoe entered into a two-page fee agreement with Brown (the "Brown Agreement"), in which Gummoe agreed to pay to Brown "a fee only from the Recovery, from any source pertaining to same. Attorney's share of any such payments is twenty five percent (25%) of the gross amounts collected hereunder…" An unsigned version of the Brown Agreement is attached hereto as "Exhibit C," because Gummoe does not currently possess a signed copy. Gummoe never met either Brown or Rubin, at any time.

19. AREC and Brown, at that time, had a business arrangement in which they would split the proceeds from litigation pertaining to AREC clients equally, and this arrangement also applied to Gummoe.

20. On December 29, 1994, Brown filed suit on Gummoe's behalf, in the United States District Court for the Central District of California, entitled *Gummoe v. Warner-Tamerlane Publishing Corp., et al.*, Case No. 94-8697 ABC (JGx), for declaratory relief. The suit also included DeVorzon and Sherman as defendants. The entire suit consisted of approximately two pages of text. A true and correct copy of that complaint is attached hereto as "Exhibit D."

21. The suit was settled quickly. On January 20, 1995, Brown wrote to Warner-Tamerlane, and confirmed that a deal had been reached in which (1) Warner-Tamerlane would "purchase the U.S. renewal term of copyright" in the Compositions; (2) the purchase price would be $900,000, and (3) Gummoe would be "recognized as the sole writer for purposes of royalties," that is, the writer's share of non-performance royalties. A true and correct copy of that communication is attached hereto as "Exhibit E."

22. In early January 1995, Brown also arranged for Gummoe to settle claims against DeVorzon and Sherman, by means of a two-page written agreement dated January 10, 1995. Even though DeVorzon and Sherman had been collecting royalties for decades, royalties that should have been paid to Gummoe, DeVorzon and Sherman were allowed to "walk away" from the dispute without any payment to Gummoe, and received a full and final release.

23. In late February 1995, a formal written agreement, dated "as of January 1, 1995," was executed between Gummoe and Warner-Tamerlane (the "Administration Agreement"). In the Administration Agreement, Warner-Tamerlane purchased the renewal term of the copyright in and to the Compositions, and *only* the renewal term of copyright, from Gummoe. The limited nature of Warner-Tamerlane's rights in and to the United States copyrights is reflected in the first sentence of the Administration Agreement (prepared by Warner-Tamerlane) which provides, in pertinent part, that Warner-Tamerlane shall administrate the Compositions "during the remainder of the renewal term of U.S.

copyright in such compositions… ."

24. On or about March 1, 1995, Warner-Tamerlane sent $900,000 to AREC. On March 2, 1995, AREC sent $450,000 to Gummoe, and AREC and Brown paid themselves the other $450,000.

25. Since that time, AREC, and not Gummoe, has received all royalty statements generated and paid by Warner-Tamerlane. AREC then pays Gummoe half of those royalties, and, presumably, pays half of the remaining half to Brown.

## V

## FIRST CLAIM FOR

## COPYRIGHT INFRINGEMENT

### (Against Defendant Warner-Tamerlane)

26. Plaintiff realleges paragraphs 1 through 10, and 12 through 25, inclusive, as if fully set forth.

27. Warner-Tamerlane's rights, with regard to the U.S. copyright, only existed with regard to the renewal term of copyrights in and to the Compositions, which began on January 1, 1991 and ended on December 31, 2018 (on account of the operation of § 305 of the Copyright Act).

28. On January 1, 2019, therefore, Warner-Tamerlane had no further right to exploit the U.S. copyrights in either of the Compositions, but nevertheless continued to do so, without any license or other authority.

29. In exercising dominion over and control of the Compositions, and in continuing to issue licenses for the Compositions and to collect royalties from the exploitation of the Compositions, Warner-Tamerlane has infringed upon the rights of Gummoe in the U.S. copyright.

30. The actions of Warner-Tamerlane that infringed the U.S. copyrights in and to the Compositions have caused damage to Gummoe, in an amount to be proven at trial; Gummoe will elect the remedy provided for in § 504 of the

Copyright Act, that, is, either Warner-Tamerlane's gains and profits from the infringement, or an award of statutory damages.

## VI

## SECOND CLAIM FOR

## DECLARATORY RELIEF

### (Against Defendant Warner-Tamerlane)

31. Plaintiff realleges paragraphs 1 through 10, and 12 through 25, as if fully set forth herein.

32. As alleged herein, the Administration Agreement has, at least with regard to the U.S. copyrights in and to the Compositions, expired as of December 31, 2018.

33. Gummoe is informed and believes, and thereon alleges, that Warner-Tamerlane will not voluntarily relinquish rights in and to the U.S. copyright and acknowledge that Gummoe, and his publishing company Thunder Rhythm Music, is the rightful music publisher, as of January 1, 2019.

34. Pursuant to 28 U.S.C. §§ 2201 & 2202, a case of actual controversy within the jurisdiction of this court has arisen and now exists between Gummoe, on the one hand, and Warner-Tamerlane, on the other, concerning their respective rights and duties, in that Gummoe contends, based upon the language of the Administration Agreement and attendant documents, Warner-Tamerlane has absolutely no further rights in the U.S. copyright in and to the Compositions; that is, any rights Warner-Tamerlane had in the U.S. copyright for the Compositions terminated upon the expiration of the renewal terms on December 31, 2018. As such, Gummoe contends that Warner-Tamerlane must immediately agree to relinquish the Compositions at BMI and at other collection entities, such as The Harry Fox Agency, Inc.

35. Gummoe desires a judicial determination of his rights, and a declaration that Warner-Tamerlane lost U.S. rights in and to the Compositions as

of December 31, 2018, and may not collect or retain any royalties or revenues attributable to the exploitation of either of the Compositions, or issue licenses pertaining to the Compositions, or to exercise any other rights to which a copyright owner would be entitled.

36. Such a judicial determination of the rights and duties of the parties is necessary at this time, in that Warner-Tamerlane will not voluntarily relinquish the aforementioned claims, and without a judicial determination, Gummoe believes that Warner-Tamerlane will continue to assert rights to the U.S. copyright for the Compositions and impede Gummoe's right to publish the Compositions without interference, and to collect all monies therefrom.

## VII
## THIRD CLAIM FOR
## DECLARATORY RELIEF
### (Against Defendants AREC and Brown)

37. Plaintiff realleges paragraphs 1 through 10, and 12 through 25, as if fully set forth herein.

38. Gummoe retained AREC and Brown to make a claim against Warner-Tamerlane, DeVorzon, and Sherman, and agreed to pay AREC and Brown fifty percent of all rights and monies recovered.

39. In the civil action against Warner-Tamerlane, DeVorzon, and Sherman, what AREC and Brown "recovered," and *all* that they "recovered," was the renewal term of copyright in and to the Compositions, which ended on December 31, 2018, and which AREC and Brown arranged to sell to Warner-Tamerlane in exchange for $900,000 and future "writer's royalties."

40. Pursuant to the facts set forth above, Warner-Tamerlane is no longer the publisher of the U.S. copyright in and to the Compositions, and all such rights have reverted to Gummoe.

41. AREC and Brown no longer have any right to collect any revenues

from the Compositions, because the rights they allegedly "obtained" for Gummoe have now ceased to exist.

42. AREC and Brown have been extremely well-compensated for the small amount of work they did for Gummoe in late 1994 and early 1995. For what amounted to a few hours of legal work, AREC and Brown received $450,000 in 1995, and royalties every quarter since then, for some *twenty-four years*; this amount is, upon information and belief, several hundred thousand additional dollars.

43. In 2015, Gummoe contacted Warner-Tamerlane and took the position that Warner-Tamerlane had no right to the extension term of the U.S. copyright in "Rhythm of the Rain." After Chuck Rubin learned of this communication, Rubin wrote an email to Gummoe on October 23, 2015, in which Rubin confirmed that "your 1995 assignment [to Warner-Tamerlane]…was only for the US renewal term which ends in 2018." But on the issue of whether AREC and Brown should still receive half of Gummoe's money from the Compositions *after* 2018, Rubin wrote: "Our recovery of your copyright interests in 1995 is subject to our contractual rights to be paid. Our contractual rights to be paid for rendering personal services are not subject to termination under the Copyright Act."

44. Pursuant to 28 U.S.C. §§ 2201 & 2202, a case of actual controversy within the jurisdiction of this court has arisen and now exists between Gummoe, on the one hand, and AREC and Brown, on the other, concerning their respective rights and duties, in that Gummoe contends that AREC and Brown have already received all of the money that would be due to them under the AREC Agreement and the Brown Agreement, that is, AREC and Brown are entitled to no more than what they actually "obtained" from Warner-Tamerlane, and they "obtained" or "recovered" no more than that was set forth in the Administration Agreement. Simply put, when the rights of Warner-Tamerlane ended, so did the rights of AREC and Brown.

45. AREC and Brown, on the other hand, contend that Gummoe must pay them one-half of anything that Gummoe receives at any time in the present or the future, with the except of the "writer's share" from BMI, which Gummoe has been receiving since the 1960s. That AREC and Brown are making that claim is not only supported by the email sent by Chuck Rubin to Gummoe in October 2015, but also upon the fact that AREC has a long history of suing its clients upon the slightest questioning of the "rights" that AREC maintains has been assigned to it. Litigation against clients appears to be one of AREC's main tools to make sure that it never ceases to collect any of its various income streams generated from the creative works of others. In light of AREC's perennially aggressive stance in such matters, there is no question that any sort of informal resolution of this matter would be impossible, and, therefore, judicial resolution of this matter is a necessity.

46. Gummoe desires a judicial determination of his rights, and a declaration that AREC and Brown may not, as of January 1, 2019, collect or retain *any* royalties or revenues attributable to the exploitation of either of the Compositions, throughout the world.

47. Such a judicial determination of the rights and duties of the parties is necessary at this time, in that AREC and Brown will not voluntarily relinquish any claims that either of them has to continue to collect revenues attributable to the exploitation of either of the Compositions, throughout the world. Gummoe believes that AREC and Brown will continue to make such claims and impede Gummoe's right to publish the Compositions without interference, and to collect all monies therefrom, unless a judicial determination is made with respect to those rights.

///
///
///

WHEREFORE, plaintiff prays for judgment as follows:

1. On the First Claim, for damages for copyright infringement, in an amount pursuant to § 504 of the Copyright Act, to be proven at trial;
2. On the Second Claim, for a judicial declaration that: (a) Warner-Tamerlrane's rights in and to the United States copyrights of the Compositions expired on December 31, 2018, and that Gummoe is, as of January 1, 2019, the owner of all right, title, and interest in the United States copyrights in and to the Compositions;
3. On the Third Claim, for a judicial declaration that: (a) neither AREC nor Brown are entitled to collect any further monies, from any source, including, but not limited to, Gummoe, on account of any exploitation of the Compositions, throughout the world, because the rights of AREC and Brown expired on the same date as the Administration Agreement, that is, December 31, 2018;
4. For costs of suit incurred;
5. For reasonable attorney's fees as part of the costs; and
6. For such other and further relief as the court should deem just and proper.

Dated: February 4, 2019    By:  */s/ Evan S. Cohen*
                                EVAN S. COHEN

                                Attorney for Plaintiff
                                JOHN GUMMOE

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: February 4, 2019        By:   */s/ Evan S. Cohen*
                                              EVAN S. COHEN

                                        Attorney for Plaintiff
                                        JOHN GUMMOE